533 So.2d 1251 (1988)
ACCOUNTANTS' ASSOCIATION OF LOUISIANA, et al.,
v.
STATE of Losuaiana, et al.
No. 88-CA-0419.
Court of Appeal of Louisiana, Fourth Circuit.
October 27, 1988.
Rehearing Denied December 14, 1988.
*1252 Henican, James & Cleveland, C. Ellis Henican, Jr., Judith E. Deck, New Orleans, for plaintiffs/appellants.
Adams & Reese, Robert J. Conrad, Jr., New Orleans, for defendants/appellees.
Before GARRISON, KLEES and LOBRANO, JJ.
KLEES, Judge.
Plaintiffs seek to have declared unconstitutional certain provisions of the Louisiana Public Accountancy Law (La.R.S. 37:71 et seq.) which prohibit unlicensed, uncertified accountants from issuing "review reports." The district court upheld the constitutionality of the law, and we affirm.
*1253 La.R.S. 37:77 provides that no person shall engage in the practice of public accountancy in this state unless he has a certified public accountant's license. The practice of public accounting is defined as follows:
(1) Offering to perform, or performing for the public, accounting or accounting related services while holding one's self out as a certified public accountant or as a firm of certified public accountants; or
(2) Signing or affixing one's own or firm name used in one's profession or business, to any opinion or certificate attesting in any way to the reliability of any representation or estimate in regard to any person or organization, embracing financial information or facts respecting compliance with conditions established by law or contract, including but not limited to statutes, ordinances, regulations, grants, loans and appropriation, together with any wording accompanying or contained in such opinion or certificate which indicates (a) that he is an accountant or auditor or that the firm is composed of, or employs, accountants or auditors, or (b) that he has expert knowledge in accounting or auditing or that the firm is composed of or employs persons having expertise in accounting or auditing; or
(3) Offering to the public or to prospective clients to perform, or actually performing on behalf of clients, professional services that involve or require an audit, or examination of financial records leading to the expression of a written opinion concerning same; or
(4) Maintaining an office for the transaction of business as a certified public accountant.
La.R.S. 37:72. Violation of the statute is a misdemeanor. La.R.S. 37:83. The statute also creates the State Board of Certified Public Accountants, an agency given the power of regulating the practice of public accounting so as "to preserve and protect the public health, safety and welfare." R.S. 37:75(A)(3). Pursuant to this authority, the Board has promulgated rules indicating that the issuance of a "review report" is included in the statutory definition of "public accounting".
A "review" is one of three distinct types of financial analysis defined by the American Institute of Certified Public Accountants (AICPA), a national association widely recognized as the standard-setting body in the field of public accounting. The other two types are the audit and the compilation. Plaintiffs do not challenge the fact that the audit, the most comprehensive of the three functions, is reserved to licensed CPA's. At the other end of the spectrum is the compilation, essentially the gathering of financial information, which non-CPA's are expressly permitted to perform. In between these two is the function at issue here, known as a review. The object of a review is the issuance of a review report. The standard form of such a report, as prescribed by the AICPA, is as follows:
"I (we) have reviewed the accompanying balance sheet of XYZ Company as of December 31, 19XX, and the related statements of income, retained earnings, and changes in financial position for the year then ended, in accordance with standards established by the American Institute of Certified Public Accountants. All information included in these financial statements is the representation of the management (owner) of XYZ Company. A review consists principally of inquiries of company personnel and analytical procedures applied to financial data. It is substantially less in scope than an examination in accordance with generally accepted auditing standards, the objective of which is the expression of an opinion regarding the financial statements taken as a whole. Accordingly, I (we) do not express such an opinion. Based on my (our) review, I am (we are) not aware of any material modifications that should be made to the accompanying financial statements in order for them to be in conformity with generally accepted accounting principles."
Plaintiffs, a group of accountants who are not CPA's, were ordered by the State *1254 Board to cease issuing review reports. These reports contained essentially the same language as the AICPA form, except that the phrase "in accordance with established standards" is substituted for the phrase "in accordance with standards established by the American Institute of Certified Public Accountants."
Plaintiffs originally filed suit seeking a declaration that their review reports did not fall within the statute's definition of public accounting, and that the Board's rules were therefore invalid. Alternatively, plaintiffs argued that the statute was unconstitutional. In a prior decision, reversing the trial court, we held that non-CPA's were prohibited from issuing review reports by R.S. 37:72(A)(2). Accountants' Association of Louisiana v. State, 487 So. 2d 155, 159 (La.App. 4th Cir.1986), writ denied, 492 So.2d 1219 (La.1986). We then remanded the case to the district court for consideration of the constitutional issues. Id. at 160. The district court found the statute as applied to be constitutional, and plaintiffs have appealed.
Plaintiffs argue that the statutory prohibition against the issuance of review reports by uncertified, unlicensed accountants violates federal and state constitutional guarantees of freedom of speech, substantive due process, and equal protection. We disagree.
I. Freedom of Speech
Plaintiffs' assertion that this statute poses an unconstitutional restriction on speech is without merit. The rendering of financial reports such as an accountant's review report is not so much speech as it is the manner in which the accountant expresses himself in the practice of his professionjust as a lawyer renders legal opinions or a doctor gives a medical diagnosis. There is no question that the states "have a compelling interest in the practice of professions within their boundaries, and that as part of their power to protect the public health, safety, and other valid interests they have broad power to establish standards for licensing practitioners and regulating the practice of professions."
Goldfarb v. Virginia State Bar, 421 U.S. 773, 792, 95 S.Ct. 2004, 2016, 44 L.Ed.2d 572, 588 (1975).
We recognize that there is a point at which the state law regulating a profession might pose an impermissible restriction upon speech, but that point is not reached in this case. Justice White has thoroughly examined this problem in a recent concurring opinion:
This issue involves a collision between the power of government to license and regulate those who would pursue a profession or vocation and the rights of freedom of speech....
The power of government to regulate the professions is not lost whenever the practice of a profession entails speech. The underlying principle was expressed by the Court in Giboney v. Empire Storage & Ice Co., 336 U.S. 490, 502, 69 S.Ct. 684, 690-691, 93 L.Ed. 834 (1949): "it has never been deemed an abridgment of freedom of speech or press to make a course of conduct illegal merely because the conduct was in part initiated, evidenced, or carried out by means of language, either spoken, written, or printed."
Perhaps the most obvious example of a "speaking profession" that is subject to governmental licensing is the legal professions. Although a lawyer's work is almost entirely devoted to the sort of communicative acts that, viewed in isolation, fall within the First Amendment's protection, we have never doubted that "[a] State can require high standards of qualification, such as good moral character or proficiency in its law, before it admits an applicant to the bar...."
Lowe v. S.E.C., 472 U.S. 181, 228, 105 S.Ct. 2557, 2582, 86 L.Ed.2d 130, 162 (1985) (White, J., concurring) (Citing Schware v. Board of Bar Examiners, 353 U.S. 232, 239, 77 S.Ct. 752, 756, 1 L.Ed.2d 796 (1957)). Later in the opinion, Justice White very clearly points out the distinction between permissible and impermissible regulations:
These ideas help to locate the point where regulation of a profession leaves off and prohibitions on speech begin.

*1255 One who takes the affairs of a client personally in hand and purports to exercise judgment on behalf of the client in the light of the client's individual needs and circumstances is properly viewed as engaging in the practice of profession. Just as offer and acceptance are communications incidental to the regulable transaction called a contract, the professional's speech is incidental to the conduct of the profession. If the government enacts generally applicable licensing provisions limiting the class of persons who may practice the profession, it cannot be said to have enacted a limitation on freedom of speech or the press subject to First Amendment scrutiny. Where the personal nexus between professional and client does not exist, and a speaker does not purport to be exercising judgment on behalf of any particular individual with whose circumstances he is directly acquainted, government regulation ceases to function as legitimate regulation of professional practice with only incidental impact on speech; it becomes a regulation of speaking or publishing as such, subject to the First Amendment's command that "Congress shall make no law ... abridging the freedom of speech, or of the press."
Id., 472 U.S. at 232, 105 S.Ct. at 2584, 86 L.Ed.2d at 164 (Footnotes omitted) (Emphasis added). As this Court has already determined that the rendering of a review report constitutes the practice of public accounting, we find that the prohibition against the rendering of such reports by uncertified accountants clearly qualifies as a "generally applicable licensing provision limiting the class of persons who may practice the profession," and as such is not a limitation upon plaintiffs' freedom of speech. We therefore reject plaintiffs' argument in this regard.
II. Substantive Due Process
Plaintiffs next argue that the state law violates the constitutional guarantee of due process by unreasonably preventing them from engaging in the occupation of their choice. As the Louisiana Supreme Court has stated: "The substantive guarantee of due process in the federal and state constitutions requires only that the legislation have a rational relationship to a legitimate state interest." Theriot v. Terrebonne Parish Police Jury, 436 So.2d 515, 520 (La.1983) (Citations omitted). Stated another way, the test is whether the regulation is reasonable in relation to the goal to be attained and is adopted in the interest of the community as a whole. Everett v. Goldman, 359 So.2d 1256, 1268 (La.1978).
The purpose of the statute in question is to protect the public from expressions of opinion by persons unqualifed in the highly technical profession of accounting. Accountants' Association of Louisiana, supra, 487 So.2d at 159. There is no doubt that this is a legitimate state objective. See State v. De Verges, 153 La. 349, 95 So. 805 (1923). As the United States Supreme Court has long recognized, the states have the power to regulate professionals in such a way as will protect the general public from "the consequences of ignorance and incapacity as well as deception and fraud." Dent v. West Virginia, 129 U.S. 114, 122, 9 S.Ct. 231, 233, 32 L.Ed. 623 (1889).
Not only does the state have a legitimate interest in protecting the public from ignorance and incapacity, but the means chosenthat is, preventing uncertified accountants from rendering opinions in the form of review reportsis rationally related to that interest. It is axiomatic that state statutes are presumed constitutional and must be proven otherwise by the party attacking them. Theriot v. Terrebonne Parish Police Jury, supra, 436 So.2d at 520. In this case, plaintiffs have failed to meet the burden of proving that this regulation violates constitutional guarantees of due process.
III. Equal Protection
Plaintiffs' final challenge to the Accountancy Law is that it violates the constitutional guarantee of equal protection by unfairly discriminating among persons. *1256 Under federal equal protection analysis, because the regulation in question concerns neither a fundamental right nor a suspect classification, it may be set aside only if the classification it makes "[is] based solely on reasons totally unrelated to the pursuit of the State's goals and only if no grounds can be conceived to justify [it]." Clements v. Fashing, 457 U.S. 957, 963, 102 S.Ct. 2836, 2843, 73 L.Ed.2d 508 (1982) (Citations omitted). The Accountancy Law clearly passes this test, as its classification (between accountants who have met the standards for licensure and certification and those who have not) is obviously related to the state's aim of protecting the public from relying upon opinions of accountants who may not be competent to give such opinions. Therefore, the law does not violate the equal protection clause of the federal constitution.
Neither does it violate the equal protection guarantee found in Article I, Section 3 of the Louisiana Constitution, although the analysis is somewhat different, as outlined by the State Supreme Court in Sibley v. Board of Supervisors of Louisiana State University, 477 So.2d 1094 (La. 1985). According to the Sibley Court, the appropriate analysis under the state constitution is as follows:
Article I, Section 3 commands the courts to decline enforcement of a legislative classification of individuals in three different situations: (1) When the law classifies individuals by race or religious beliefs, it shall be repudiated completely; (2) When the statute classifies persons on basis of birth, age, sex, culture, physical condition, or political ideas or affiliations, its enforcement shall be refused unless the state or other advocate of the classification shows that the classification has a reasonable basis; (3) When the law classifies individuals on any other basis, it shall be rejected whenever a member of a disadvantaged class shows that it does not suitably further any appropriate state interest.
Sibley, supra, at 1107-1108.
As the Accountancy Law falls into category (3), it will be struck down only if plaintiffs show that "it does not suitably further any appropriate state interest." Our review of the record reveals no such showing by plaintiffs. We find no evidence that the law does not tend to accomplish its objective of protecting clients from potentially being harmed by relying upon the opinions of uncertified accountants. Therefore, we reject plaintiffs' contention that the statute violates the equal protection or "Right to Individual Dignity" provision of the Louisiana Constitution.
Accordingly, for the reasons stated herein, we reject plaintiffs' challenge to the constitutionality of R.S. 37:71 et seq. as applied to them, and we affirm the judgment of the district court upholding this law.
AFFIRMED.