Dear Mr. Landry:
You have requested an opinion of this office on behalf of the Iberia Parish School Board pertaining to LSA-R.S. 17:493.1. Specifically, you ask the following:
 1. Does the phrase in Section A, "a contract bus driver paid compensation for non-passenger miles," mean that school districts that do not pay bus drivers for non-passenger miles are exempt from compliance with Section A and B of the statute?
 2. Is LRS 17:493.1 constitutional since it essentially dictates the individual that the Superintendent must recommend for a bus route vacancy and requires Board approval.
 3. Can the statute be considered arbitrary or capricious since it treats one category of School Board employees different from all other categories?" LSA-R.S. 17:493.1 as amended by Acts 1993, No. 826 s. 1 now reads as follows:
 A. Whenever a school bus operator is needed to drive a new route or a route vacated by a previous operator, the school bus operator who is tenured and has acquired the greatest seniority shall be offered the opportunity to and may change from driving his route to the vacant route before another operator is selected. If the tenured bus operator with the greatest seniority chooses not to change to the vacant route, the route shall then be offered in order of seniority to a school bus operator who has acquired tenure. Only if no tenured operator chooses to change to the vacant route may the route be offered to a full-time probationary bus operator. If a tenured bus operator chooses to change routes, his then vacant route shall be filled using the process described in this Subsection.
 B. A substitute operator shall not be used to fill a route vacancy except as provided in R.S. 17:500 (C)(2)(b) and (c).
 C. Only if a city or parish school board is required, in filling a vacant route pursuant to Sub-section A of this Section, to bear an increase in unreimbursed costs for nonpassenger miles over those attributable to the previous operator who vacated the route, may a school system select an operator to fill the vacant route on a different basis.
Since Section A no longer contains the language "a contract bus driver paid compensation for non-passenger miles," it is not necessary to address question one.
In response to question two, since the statute no longer contains language which requires the superintendent to recommend the school bus driver who has the most seniority to fill a vacant school bus route, it is also not necessary to address this question.
In response to question three, you seem to be seeking an equal protection analysis of the validity of classifying two different groups, particularly tenured bus drivers and non-tenured bus drivers.
A statute is presumed to be constitutional unless proven otherwise. Orleans Parish School Board v. Louisiana State Board of Education, 41 So.2d 509 (La. 1949).
In Sibley v. Board of Supervisors of Louisiana State University, 477 So.2d 1094, 1107 (La. 1985) (on re-hearing), the Supreme Court anticipated three types of legislative classifications of individuals, and the standard of review and the burden of proof applicable to each under Article I, Section 3
of the Louisiana Constitution of 1974. Sibley held that:
 Article I, Section 3 commands the courts to decline enforcement of a legislative classification of individuals in three different situations: (1) When the law classifies individuals by race or religious beliefs, it shall be repudiated completely; (2) When the statute classifies persons on the basis of birth, age, sex, culture, physical condition, or political ideas or affiliations, its enforcement shall be refused unless the state or other advocate of the classification shows that the classification has a reasonable basis; (3) When the law classifies individuals on any other basis, it shall be rejected whenever a member of a disadvantaged class shows that it does not suitably further appropriate state interest.
Additionally, in Nordlinger v. Hahn, 505 U.S. 1,112 S. Ct. 2326, 120 L.Ed.2d 1 (1992), the United States Supreme Court restated the basis principle regarding the burden of proof that must be carried in an equal protection claim:
 [T]he Equal Protection Clause does not demand for purposes of rational basis review that a legislature or governing decision maker actually articulate at any time the purpose or rationale supporting its classification. . . [This] Court's review does require that a purpose may conceivably or "may reasonably have been the purpose and policy" of the relevant governmental decisionmaker. (citations omitted).
112 S.Ct. at 2334.
It is also important to note that, where the classification is not suspect and thus a "rational relationship" test is to be applied to a statutory scheme:
 [T]he states are not required to convince the courts of the correctness of their legislative judgments. Rather, "those challenging the legislative judgment must convince the court that the legislative facts on which the classification is apparently based could not reasonably be conceived to be true by the governmental decisionmaker." Vance v. Bradley, 440 U.S. 111, 99 S.Ct., at 950. Minnesota v. Cloverleaf Creamery Co., 449 U.S. 456.
In Hancock Industries v. Schaeffer, 811 F.2d 225 (3d Cir. 1987), the court explained the presumption of validity under rational basis scrutiny as follows:
 When faced with a challenge to a governmental classification under the rational basis test, a court should ask, first, whether at least one of the purposes of the classification involves a legitimate public interest and, second, whether the classification is rationally related to achievement of that purpose. Neither of these inquiries however, involves the court in a determination of historic fact and, accordingly, the court has no occasion to inquire into the subjective motives of the decisionmakers. The court accepts at face value contemporaneous declarations of the legislative purposes, or, in the absence thereof, rationales constructed after the fact, unless "an examination of the circumstances forces [the court] to conclude that they `could not have been a goal of the legislation.'" Thus, where "there are plausible reasons for [the legislative] action, [the court's] inquiry is at an end. It is, of course, `constitutionally irrelevant whether this reasoning in fact underlay the legislative decision.'" (citations omitted).
811 F.2d at 237, 238.
Furthermore, in reviewing the rationality of the classification, a court may hypothesize the legislative purposes:
 [T]he Due Process Clause can be thought to interpose a bar [to the state's statutory classification scheme] only if the statute manifests a patently arbitrary classification, utterly lacking in rational justification.
 [I]t is . . . constitutionally irrelevant whether this reasoning (i.d., a hypothesized rationale for the classification] in fact underlay the legislative decision . . .
Flemming v. Nestor, 363 U.S. 603, 80 S.Ct. 1367 (1960).
The filling of a vacant position or new position by the school bus operator who is tenured and has acquired the greatest seniority is obviously not based on race or national origin or any other group classification of individuals in the first or second tier but merely on the tenured school bus operator who has acquired the greatest seniority. Therefore, neither the first or second tier of analysis set forth in Sibley is defeated by an equal protection claim in this particular situation.
Thus, it is for a member of the class of non-tenured bus drivers to show that the rules regarding that class promulgated by the legislature do not suitably further any appropriate state interest (See third tier of analysis set forth in Sibley). In other words, the decisionmaker must only have rationally believed that the classification was related to achieving a legitimate state objective. Decisions following Sibley have placed this burden on the plaintiff challenging the enactment's constitutionality. See, e.g., Parker v. Cappel, 500 So.2d 771 (La. 1987); Crier v. Whitecloud, 496 So.2d 305 (La. 1986); Accountants' Association of Louisiana v. State, 533 So.2d 1251
(La.App. 4th Cir. 1988). The burden placed on the plaintiff of proving that the law does not further any legitimate state interest has recently been characterized as "onerous", while the defendant only need show that the enactment furthers a significant state interest. DeSalvo v. State, 624 So.2d 897 (La. 1933).
Therefore, under Sibley analysis of Article I, Section 3 of the Louisiana Constitution of 1974, the Legislature's decision to give preference to the tenured school bus operator who has acquired the greatest seniority would survive an equal protection attack. The State in response to plaintiff's claim that no significant state interest is served by deferring rules for nontenured or probationary school bus drivers would only have to show that the rule furthers a significant state interest such as providing an incentive for school bus drivers to continue to provide the community with their experience as school bus drivers and to serve the needs of our children. It should be noted that the preference given to tenured school bus drivers can extend to non-tenured probationary school bus drivers in the event that the tenured school bus drivers decline to fill a vacancy or a new position.
I believe that under both the state and federal constitutions, the legislative preference given to tenured school bus drivers with the greatest seniority would survive constitutional attack.
I hope this opinion sufficiently addresses your concerns. If I can be of further assistance, please don't hesitate to call.
Yours very truly
 Richard P. Ieyoub Attorney General
 By: Beth Conrad Langston Assistant Attorney General