Lori LeBEAUF et al., Plaintiffs,

v.

STATE BOARD OF EDUCATION OF LOUISIANA, as a corporate body, and W. E. Whetstone, individually, and as President of the Louisiana State Board of Education, and William J. Dodd, individually and as Superintendent of Public Education of the State of Louisiana, Defendants.

Civ. A. No. 3154.

United States District Court
E. D. Louisiana,
Baton Rouge Division.

July 27, 1965.

---

25. See footnote 22, supra.

A. P. Tureaud, A. M. Trudeau, Jr., Ernest N. Morial, New Orleans, La., Lionel R. Collins, Gretna, La., Jesse N. Stone, Jr., Shreveport, La., Marion O. White, Opelousas, La., Jack Greenberg, Norman Amaker, New York City, New York, for plaintiffs.

Jack P. F. Gremillion, Atty. Gen. of Louisiana, Thomas W. McFerrin, Frank L. Dobson, James E. Phillips, Jr., Sp. Counsel, Baton Rouge, La., for defendants.

WEST, District Judge.

This suit was filed in an attempt to bring about the immediate desegregation of all public schools in the State of Louisiana without the necessity of filing separate suits against the various parish school boards under whose supervision and control the affected schools operate. In an attempt to accomplish this purpose, this suit is filed as a class action against the State Board of Education, its President, the State Superintendent of Public Education, the Treasurer of the State of Louisiana, and the State Auditor. None of the parish school boards or their members are made parties to this suit. In their prayer plaintiffs demand that this Court restrain and enjoin the defendants from allocating, disbursing, remitting, paying, or apportioning any funds or property to any school in the State of Louisiana which is being operated on a racially segregated basis.

The funds which are allocated and distributed to the public schools in Louisiana are disbursed pursuant to the provisions of Article 12, Section 14, of the Louisiana Constitution, LSA–R.S. 17:14 and LSA–R.S. 17:193. It is disbursements pursuant to these statutory and constitutional provisions that plaintiffs seek to enjoin. They allege that "the allocation, apportionment, and distribution of funds to the free public schools of the State of Louisiana" pursuant to the above referred to constitutional and statutory provisions "deny the plaintiffs and all other persons similarly situated their rights and privileges as citizens of the United States, due process of law, and equal protection of the law as secured by the Fourteenth Amendment to the Constitution of the United States, and rights and privileges secured to them by Title 42, U.S.C. §§ 1981, 1983, and 2000d when said free public schools are maintained and operated on a racially segregated basis." In the alternative, plaintiffs ask this Court to require defendants "in the exercise of their supervisory powers of the parish school boards in the State of Louisiana, to compel the school authorities of the parishes named * * * to submit, * * * a plan for the complete reorganization of the public schools under their jurisdiction on a nondiscriminatory basis * * *."

To plaintiffs' complaint respondents have filed a motion to dismiss for failure to state a claim upon which relief can be granted. Oral arguments on this motion have been heard, and now, considering the record herein, the arguments and briefs of counsel, and the law applicable thereto, it is the opinion of this Court that respondents' motion to dismiss should be granted.

It is the plaintiffs' contention that pursuant to the provisions of Title 42, U.S.C. §§ 1981, 1983, and 2000d, they are entitled to a declaratory judgment, to be rendered by authority of the provisions of Title 28, U.S.C. §§ 2201–2202, declaring that the enforcement or operation by the respondents of the provisions of Article 12, Section 14, of the Louisiana Con-

stitution, LSA–R.S. 17:14, LSA–R.S. 17:193, or "any other constitutional or statutory provision of the State of Louisiana providing for the allocation and distribution of funds to the public schools of the State of Louisiana," deprives them of their "rights and privileges, due process of law, and equal protection of the law" secured to them by the Fourteenth Amendment to the United States Constitution.

The Court finds that this case is properly before it under Title 28, U.S.C. § 2201, providing for the rendering of declaratory judgments.

The federal statutes relied upon by the plaintiff provide as follows:

Title 42, U.S.C. § 1981:

"All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other."

Title 42, U.S.C. § 1983:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

Title 42, U.S.C. § 2000d:

"No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."

Title 42, U.S.C. §§ 2000d–1 through 2000d–4 provide for the implementation of the provisions of § 2000d and set forth the methods by which that section may be enforced. The main weapon for enforcement is the termination of federal assistance to programs wherein discrimination because of race is practiced or allowed by the State to exist.

These federal laws are, according to plaintiffs' contention, violated by the operation of Article 12, Section 14 of the Louisiana Constitution, LSA–R.S. 17:14 and LSA–R.S. 17:193. Article 12, Section 14 of the Louisiana Constitution is a very long and detailed provision providing for the source and apportionment of funds to be used in the operation of the elementary and secondary schools in the State of Louisiana. This section of the Constitution provides, among other things, for a certain portion of the ad valorem tax in the State of Louisiana, a portion of the severance tax, a portion of the gasoline and motor fuel tax, and such other taxes as the Legislature might specifically pass and dedicate to the public schools, be used for the operation of the elementary and secondary schools of the State of Louisiana. The allocation of these funds to the various school systems throughout the State is then provided for. Briefly stated, a large portion of the funds so allocated must be apportioned on a per educable basis, and the remaining distribution is made on a basis of equalization so as to provide and insure a minimum educational program in all public schools. It is then provided that any funds appropriated or made available by the United States Office of Education or any other agency of the Federal Government shall be distributed to the various schools in accordance with the terms of the law governing such funds. There is absolutely no mention of any kind made in this article of the Louisiana Constitution of the question of segregation of races in the public schools. As a matter of fact, prior to 1962, Article 12, Section 1 of the Louisiana Constitu-

tion did specifically provide for the operation of separate schools for white and colored children. However, this section was amended in 1962 so as to delete all reference to separately operated white and negro schools, and thus, there is now contained no provision whatsoever in the Louisiana Constitution ordering the segregation of pupils on the basis of race.

LSA–R.S. 17:14, the operation of which plaintiffs seek to enjoin, merely provides, in accordance with the constitutional mandate, that the funds to be distributed by the State Superintendent of Education for the operation of the public schools shall be distributed on a per educable basis, and sets forth the specific times at which, and methods by which the Superintendent of Education shall draw and transmit the warrants on the State Auditor covering the amounts to be distributed to each of the various school systems in the State. This legislative act is merely for the purpose of implementing the provisions of Article 12, Section 14 of the Louisiana Constitution, and makes no mention whatsoever of any racial basis for the allocation or distribution of funds.

LSA–R.S. 17:193 is the statutory provision implementing that part of Article 12, Section 14 of the Louisiana Constitution which allows the State Board of Education to receive certain grants or funds from the United States Government to be used in the operation of its school system. There is no mention made in this statute which in any way refers to or pertains to separation of the races or the operation of the schools on a racially segregated basis.

Thus it is readily apparent that none of the constitutional or statutory provisions relied upon by plaintiffs in this case make any reference to race, nor do they in any way require the State Board of Education, its President, the State Superintendent of Public Education, the Treasurer of the State of Louisiana, or the Auditor for the State of Louisiana to maintain and operate or to order the maintenance and operation of a segregated school system in the State of Louisiana. There is nothing in these quoted provisions that in any way either permits or requires the allocation and distribution of funds for the maintenance of the public school system in the State of Louisiana to be in any way dependent upon the maintenance or operation of a segregated school system. Indeed, under Louisiana law, none of these respondents could, even if they wished to do so, require the Parish School Boards, or any of them, to operate racially segregated schools. They could not, under the law of Louisiana, allot or disburse funds for the operation of schools on the basis of the race or color of the pupils affected. The constitutional and statutory provisions herein involved expressly provide the method by which these funds will be allocated and distributed and such provisions in no way relate to the question of race or color of the pupils involved. Indeed, the Constitution of the State of Louisiana expressly forbids the State Board of Education from in any way controlling the business affairs of the Parish School Boards. Article 12, Section 4 of the Louisiana Constitution specifically provides that:

"The Legislature shall prescribe the duties of said Board and define its powers; provided, that said Board shall not control the business affairs of Parish School Boards, nor the selection or removal of their officers and directors."

LSA–R.S. 17:81 grants to the individual Parish School Boards the power and authority to operate the schools under their supervision and control. Pursuant to this statute, the individual Parish School Boards have complete authority to determine the number of schools to be opened, the location of the school houses, and the number of teachers to be employed. They have the power to select teachers to be employed in their system, which teachers may be employed without the endorsement or approval of the Superintendent of Education. Each individual Parish School Board is charged with the duty of exercising proper vigilance in securing for the schools

under its supervision and control all funds destined for the support of the schools including the state funds apportioned thereto and all other funds. This specific grant of power to the Parish School Boards, coupled with the prohibition contained in Article 12, Section 4 of the Louisiana Constitution, providing that the State Board of Education shall not control the business affairs of the Parish School Boards, makes it readily apparent that if segregated school systems are in operation in the various parishes of Louisiana, they are being so operated by direction of and under the control and supervision of the individual Parish School Boards involved rather than by direction of the State Board of Education or any of the other respondents in this action. There is apparently no State constitutional or statutory provision at the present time in Louisiana which would prevent or prohibit the Parish School Boards from continuing to operate segregated school systems. There is, on the other hand, the constitutional provision, Article 12, Section 4 of the Louisiana Constitution, which prohibits the respondents herein from interfering with the business affairs of the local school boards and the schools under their control.

■ To declare the provisions of Article 12, Section 14 of the Louisiana Constitution, LSA–R.S. 17:14 and LSA–R.S. 17:193, unconstitutional and violative of the constitutional rights of the plaintiffs would, in effect, be to declare that the State of Louisiana has no constitutional right to allocate and distribute funds on a per educable basis for the maintenance and operation of a public school system throughout the State. The allocation and distribution of funds pursuant to these constitutional and statutory provisions is required to be made purely and simply on the basis of per educable students in the area, together with an equalization factor being applied, and it in no way depends upon the operation of a segregated or integrated school system. If public schools in the State of Louisiana are being operated on a segregated basis, con-

trary to existing federal law, it is, under the law of Louisiana, the various Parish School Boards under whose supervision and control such schools are operated that must answer to the charge. The Court is not unaware of the fact that it is an extremely cumbersome procedure to force plaintiffs throughout the State to bring separate actions against each of the sixty-four Parish School Boards involved. However, it would be not only extremely unwise, but obviously improper, illegal and dangerous to allow the expedient of the moment to obliterate the clear provisions of the law which requires that when such relief is sought, it must be sought against the proper defendants. The proper defendants are not the respondents in this suit.

Plaintiffs contend that the operation of these state constitutional and stautory provisions violate their rights under the provisions of Title 42, U.S.C. §§ 1981, 1983, and 2000d. Such a contention is obviously without merit. Relief under §§ 1981 and 1983 is available only when, under color of some statute, ordinance, regulation, custom, or usage, a person is deprived of the rights, privileges, or immunities secured to him by the Constitution and laws of the United States. It may well be that the rights and privileges secured by the United States Constitution to these plaintiffs or to members of the class whom they represent are, under the present state of the law, being denied by certain Parish School Boards throughout the state who have thus far refused to abide by the law of the land requiring an end to forced segregation in public schools. If such is the case, plaintiffs must seek redress against the responsible Parish School Boards. There simply is no right, privilege, or immunity secured to these plaintiffs by the Constitution and laws of the United States being in any way denied by these respondents when they allocate and disburse funds pursuant to the provisions of Article 12, Section 14 of the Louisiana Constitution, and LSA–R.S. 17:14 and LSA–R.S. 17:193.

Title 42, U.S.C. § 2000d provides that no person shall be denied the benefits of or be subjected to discrimination under any program or activity receiving federal financial assistance on the ground of race, color, or national origin. The sections immediately following § 2000d provide for the method of implementing that section. In short, these provisions simply provide that if any state, school district, or other department or agency receiving federal aid fails to comply with the provisions of § 2000d, the Federal Government may terminate all future aid and assistance to the particular program involved. Section 2000d in no way grants any right to these plaintiffs to have an injunction issue against the State of Louisiana prohibiting it or its agencies from distributing state funds, on a per educable basis, to the various local school boards for the operation of the public school system. The penalty for failure to comply with Section 2000d is the possible loss of future Federal aid for the specific program involved. There is simply no authority under the law for penalizing the State or its agencies for failure to comply with § 2000d by prohibiting the expenditure of state funds for the maintenance and operation of the state's public school system.

It is thus apparent that there is no legal justification for granting plaintiffs the relief which they seek in this law suit. There is nothing unconstitutional about the Louisiana constitutional and statutory provisions complained of. The implementation and operation of those statutes in no way deprive the plaintiffs of any federally guaranteed rights. Plaintiffs are simply suing the wrong people under the wrong provisions of law. It is not for this Court to say what the law ought to be. It is only for this Court to interpret the law as it is. Under the law, as it presently is, if the public schools in the various Parishes enumerated in plaintiffs' complaint are being operated on a forced segregation basis, it is the local School Boards and their members who must answer for the deprivation of plaintiffs' constitutional rights rather than the respondents herein sued. As cumbersome as this procedure may be, it cannot be changed by this or any other Court. For this Court, or any other Court to attempt to do so, would amount to a usurpation of the powers and prerogatives of the legislative branch of the government. The State of Louisiana, through its legislative department, has ordained that the operation and control of the parish schools shall be under the complete control of the local Parish School Boards. It is these Boards that must answer for any deprivation of constitutional rights occasioned by their improper operation of the schools under their supervision and control.

For these reasons, this suit must, on defendants' motion, be dismissed for failure to state a claim upon which relief can be granted. Judgment will be entered accordingly.