**Richard LEBANKS et al., Plaintiffs,**

v.

**Mack SPEARS et al., Defendants.**

**Civ. A. No. 71-2897.**

United States District Court,
E. D. Louisiana.

April 23, 1973.

John W. Reed, Anne B. Cotton, New Orleans, La., Paul R. Dimond, Ann Arbor, Mich. (co-counsel), for plaintiffs.

Franklin V. Endom, Jr., New Orleans, La., for Orleans Parish School Board.

Dorothy D. Wolbrette, New Orleans, La., Asst. Atty. Gen., of La., for State Dept. of Education.

Walter J. Horrell, Baton Rouge, La., for State Dept. of Hospitals and Sp. Asst. Atty. Gen.

Daniel Rinzel, U. S. Dept. of Justice, Washington, D. C., for United States as amicus curiae.

CASSIBRY, District Judge.

This cause came on for hearing on January 31, 1973 on the motion to dismiss or in the alternative to abstain filed on behalf of the defendant State Superintendent of Education, the defendant members of the State Board of Education [hereinafter the State Board of Education], and the defendant Director of the Department of Hospitals and defendant members of the State Board of Hospitals [hereinafter the State Board of Hospitals], was argued by counsel for the respective parties and submitted.

Whereupon, and upon consideration thereof:

It is ordered, adjudged and decreed that

1. The motion of the defendant State Board of Hospitals is mooted by action of the parties.

2. The motion of the defendant State Board of Education is in all respects, denied.

### REASONS

■ The defendant State Board of Education seeks to be dismissed from this action primarily on the grounds that it is powerless to afford plaintiffs any of the relief they request. Although it does appear that in the past the Louisiana Constitution has been construed so as to limit the role that the State defendant may play in the affairs of local school boards,[1] those decisions do not mandate dismissal here, for three reasons. First, those cases dealt primarily with the question whether the State Board of Education was a *necessary* party to litigation dealing primarily with isolated acts of improper conduct on the part of local school board officials.[2] Here the issue is somewhat different: whether that same State defendant is a *proper* party to a suit to remedy illegal practices of a widespread and systematic nature, whose correction will require the best efforts of and closest cooperation between both State and local officials.

Second, the alleged constitutional deprivations suffered by plaintiffs can only be corrected by a significant infusion of additional funds into the local parish school system. While it is true that the State Board of Education allocates educational funds according to a formula devised by the State Legislature from which it is not free to deviate,[3] nevertheless it is the duty of the Board to request of the Legislature an amount of money sufficient to meet the educational needs of all of the children of Louisiana.[4] In that exhoratory capacity, the Board may well be of considerable assistance to the other parties to this litigation in arriving at an equitable resolution of their differences.

Third, it appears that the authority of the State Board of Education to act in the area of special education has been

---

1. *See, e. g.* LeBeauf v. State Board of Education of Louisiana, 244 F.Supp. 256 (E.D.La.1965) ; Lemon v. Bossier Parish School Board, 240 F.Supp. 743 (W.D. La.1965) ; Whitmyer v. Lincoln Parish School Board, 75 F.Supp. 686 (W.D.La. 1948) ; Jackson v. Coxe, 208 La. 715, 23 So.2d 312 (1945). *Compare* La.Const., Art. XII, §§ 6, 11 *with* La.Const., Art. XII, § 4.

2. *But see* Lemon v. Bossier Parish School Board, 240 F.Supp. 743 (W.D.La.1965) (Segregation of parish school system held to be a matter of solely local concern). The *Lemon* decision, however, seems to be inconsistent with other decisions in this Circuit. *See* Hall v. St. Helena Parish School Board, 197 F.Supp. 649, 658 (E.D.La.1961). *Cf.* United States v. State of Texas, 447 F.2d 441 (5th Cir. 1971), aff'g 321 F.Supp. 1043 and 330 F.Supp. 235 (D.C.), stay denied, sub nom. Edgar v. United States, 404 U.S. 1206, 92 S.Ct. 8, 30 L.Ed.2d 10 (1971).

3. La.Const., Art. XII, § 14. *See* Orleans Parish Board of Education v. Louisiana Board of Education, 215 La. 703, 41 So.2d 509 (1949).

4. L.S.A.–R.S. 17:88, as amended by Act 693 of 1972.

expanded considerably by the adoption of Act 368 of 1972, amending L.S.A.–R. S. 17:1941–52. This Act, while retaining much of the traditional autonomy of local school boards, does empower the State Board of Education to develop rules and regulations governing the following aspects of locally based special education programs:

(1) The age groups of children who may be reasonably taught or trained together;[5]

(2) The procedures that must be followed before a child may be excluded from regular classes because of mental or physical disability or handicap;[6]

(3) The qualifications of teaching personnel participating in the special education program;[7]

(4) The eligibility criteria for students participating in the special education program;[8]

(5) The development of procedures by which outside agencies are employed to evaluate and diagnose handicapped children;[9]

(6) The development of standards and the approval of conditions under which facilities are furnished or services purchased;[10]

(7) The development of channels of cooperation between state and local educational bodies and other agencies within the state, both public and private;[11]

(8) The promulgation of "such [other] rules and regulations as it may deem necessary for the proper administration of this [Act]."[12]

Thus, the State Board's arguments of "powerlessness" seem to be singularly inappropriate at this juncture, as the Board stands on the threshold of a new and enlightened statewide educational program for the mentally and physically handicapped.

■ The State Board of Education, however, maintains here that the enactment of L.S.A.–R.S. 17:1941 et seq. puts this case in a posture where abstention is appropriate. In that regard, the defendant argues that the recent state enactment embodies most, if not all of the relief that the plaintiffs here might hope to obtain after a trial on the merits. It contends further that a federal court should be reluctant to interfere in this most sensitive area of state sovereignty, especially where the state law is ambiguous and the administrative regulations and guidelines necessary to implement it have not yet been developed by state agencies.

This Court finds that position to be without merit. I have no intention of interfering with the orderly development of state programs for the mentally and physically handicapped under the new state law. Neither, apparently, do the plaintiffs for they have made no effort to assert any claims thereunder, but have instead confined themselves to a request for those rights due them under the United States Constitution.[13] To the extent that this law will bear on such guarantees in the future,[14] I find it neither vague nor ambiguous. But it must also be remembered that this legislation, being prospective only, affords the plaintiffs no relief from any depri-

5. L.S.A.–R.S. 17:1942, subd. B, as amended.

6. L.S.A.–R.S. 17:1943, as amended.

7. L.S.A.–R.S. 17:1945, as amended.

8. L.S.A.–R.S. 17:1945, as amended.

9. L.S.A.–R.S. 17:1947, as amended.

10. L.S.A.–R.S. 17:1948, as amended.

11. L.S.A.–R.S. 17:1949, as amended.

12. L.S.A.–R.S. 17:1948, as amended.

13. For discussions of the nature of these rights, *see* Mills v. Board of Education of District of Columbia, 348 F.Supp. 866 (D.D.C.1972) ; Pennsylvania Association for Retarded Children v. Pennsylvania, 343 F.Supp. 279 (E.D.Pa.1972).

14. Act 368 of 1972 is to become effective "no later than the 1973–74 school year." Act 368 of 1972, sec. 2.

vations of their constitutional rights occurring prior to its enactment. Even assuming that adherence to this new statute by state and local school officials will bring them into perfect compliance with constitutional standards *as to those children now enrolled* in public schools or adequate alternative educational facilities, no reason for abstention is presented as to members of the plaintiff class, who—if their allegations are to be believed—have been removed from such suitable institutions and deprived of all opportunities for an education commensurate with their needs and abilities since a time long prior to the effective date of this legislation. Under such circumstances, further delay on my part in determining and implementing minimal federal constitutional guarantees to cover their situation would be unwarranted.

For all of the above reasons, the motion of the defendant State Board of Education to dismiss or to abstain is denied.

### ORDER CERTIFYING CLASS ACTION

Upon consideration of Plaintiffs' Motion and Brief and Defendants' Objections and Brief, and for good cause shown:

■ It is ordered that this action is hereby certified as a class action under Rule 23(b)(1) and (2) on behalf of plaintiff class consisting of persons resident of Orleans Parish who are or become between the ages of five (5) and twenty-one (21) inclusive; who have been, are or may be suspected of being mentally retarded or who have been, are or may be identified as mentally retarded; and who have been, are or may be effectively denied a free, publicly supported program of education and training and/or a fundamentally fair procedure of obtaining same.

### ORDER

And now, this 24th day of April, 1973, the parties through their counsel having agreed to the proposed Preliminary Consent Agreement set out in Appendix A, and the Court having APPROVED same on an interim basis, it is ORDERED pursuant to Rule 23(e) that the parties cause the notice set out in Appendix B: (1) to be placed in newspapers of general circulation in New Orleans on April 25 and 26, 1973, and (2) to be delivered to television and radio stations, newspapers, and wire services in New Orleans on April 25. It is further ordered that any members of plaintiff class so notified who may wish to be heard before Preliminary Orders are entered shall enter his appearance and file a written statement of objections to the proposed Preliminary Consent Agreement with the Clerk of this Court by May 9, 1973. A hearing shall be held by the Court on any objections so filed at 10:00 o'clock A.M., on May 23, 1973. It is further ordered that in the absence of good cause shown by such objections, this Preliminary Consent Agreement shall be ordered into effect on its terms on May 31, 1973.

### EXHIBIT A

### PROPOSED PRELIMINARY CONSENT AGREEMENT

INDEX:

PAGE

I Nature Of The Consent Agreement (¶¶ 1–11) 1

II General Provisions (¶¶ 12–19) 2

III With Respect To Children In Regular Classes Or Newly Entering School For The First Time (¶¶ 20–26) 4

IV With Respect To Children Who Are Suspected Of Being Retarded Or Are Retarded And Who Are Presently Not Being Served By The Orleans Parish Public Schools (¶¶ 27–31) 23

V   With Respect to Children Presently In Orleans Parish School Board Classes For The Mentally Retarded Who Have Not Been Given Notice, Evaluation, And Hearing As Set Forth Herein (¶¶ 32–33) 25

VI   With Respect To A Parent Or Child Who Suspects That The Child Is Or May Be Retarded (¶ 34)   25

VII   With Respect To Persons Over 21 Who May Have Been Suspected Of Being Or Were Mentally Retarded And Were Without Education as Children (¶ 35) 26

VIII   With Respect To Children Who May Be Or Are Mentally Retarded And Discipline Problems (¶¶ 36–40)   26

IX   Appeals To The District Court (¶ 41)   30

## PROPOSED PRELIMINARY CONSENT AGREEMENT IN LEBANKS V. SPEARS

Subject to the approval and preliminary order of the Court, it is agreed by the defendants Spears, et al. (on behalf of the Orleans Parish School Board), defendants Michot, et al. (on behalf of State Education defendants), defendants Mary and Estes and the plaintiffs Lebanks, et al., through their undersigned counsel that:

I.   Nature of the Consent Agreement

1.   The Court shall retain jurisdiction of this cause.

2.   This agreement sets forth the rights and responsibilities of the parties in this cause from the date of its entry through February 1, 1975; and each of the parties is responsible under this agreement only for those actions which are expressly made its responsibility in this agreement. The parties have consented to this agreement without trial or adjudication of any issue of fact or law herein and without this agreement constituting evidence or admission by any parties with respect to any such issue of fact or law herein.

3.   By November 1, 1974, the parties and master hearing officer shall file reports on the implementation of this consent agreement.

4.   By December 1, 1974, the parties shall file proposed modifications, if any, to the consent agreement.

5.   By December 15, 1974, the parties shall file any objections to proposed modifications.

6.   By January 10, 1975, hearings on any proposed modifications and objections thereto shall commence.

7.   Nothing herein shall be interpreted to require action in contravention of state law.

8.   Pursuant to Rule 23, Fed.R.Civ. P., notice of the extent of the proposed Preliminary Consent Agreement and the Preliminary Order approving said agreement, in form set out in Appendix B, shall be given to the class of plaintiffs by the consenting parties causing a notice to be placed in newspapers of general circulation in New Orleans on April 25 and 26, 1973, and by delivery of a joint press release to the television and radio stations, newspapers, and wire services in New Orleans on April 25.

9.   Members of plaintiff class must file objections to the proposed preliminary consent agreement by May 9, 1973.

10.   A hearing shall be held by the Court on any objections filed by members of plaintiff class on May 23, 1973.

11.   Race discrimination claims are dismissed without prejudice to the parties.

## II. General Provisions

12. The term, "parent" shall include the parent(s), guardian(s), tutor(s), or curator(s) of the child. If the child is between the ages of 18 and 21, wherever the term parent is used in connection with notice, the term parent shall include the child.

13. The term, "child" or "children" shall include only children ages five (5) through twenty-one (21) who are themselves or whose parents are residents of Orleans Parish.

14. All evaluations and educational plans, hearings, and determinations of appropriate programs of education and training hereinafter provided for shall be made in the context of a presumption that, among alternative programs and plans, placement in regular public school class with the appropriate support services is preferable to placement in special public school class and placement in a special public school class is preferable to placement in a community training facility and placement in a community training facility is preferable to placement in a residential institution or other program of education outside the Orleans Parish public schools.

15. No children in a regular class in the Orleans Parish public schools, or newly entering the Orleans Parish public schools shall be referred by the Orleans Parish School Board for evaluation for possible retardation, labeled retarded, recommended for special education placement, placed in special education classes or excluded from the Orleans Parish public schools without (a) evaluation and development of a special education plan and periodic review and (b) provision of a free public program of education and training appropriate to his age and mental status, in accordance with the procedures set forth in Section III.

16. Children presently not served by the Orleans Parish Public Schools, who are suspected of being retarded or who are retarded shall be given (a) evaluation and an educational plan, and periodic review and (b) provision of a free public program of education and training appropriate to his age and mental status, in accordance with the procedures set forth in Section IV.

17. Children presently in classes for the mentally retarded, operated by the OPSB, who have not been given notice and hearing, evaluation, and periodic review as set forth herein shall be given, by May, 1974, (a) evaluation and educational plan and periodic review and (b) provision of a free public program of education and training appropriate to his age and mental status, in accordance with the procedures set forth in Section V.

18. The parent or guardian of any child who suspects the child is or may be retarded, shall have the right to (a) hearing, evaluation and educational plan and periodic review and (b) provision of a free public program of education and training appropriate to his age and mental status as set forth in Section VI.

19. Educational and training opportunities will be made available to persons resident of Orleans Parish over twenty-one (21) years of age who were not provided educational services when children, as set forth in Section VII.

## III. WITH RESPECT TO CHILDREN IN REGULAR CLASSES OR NEWLY ENTERING SCHOOL FOR THE FIRST TIME:

20. Whenever for any reason the Orleans Parish Public Schools believe that a child should be evaluated for possible mental retardation and the development of an appropriate special education plan for the child,

a principal of the Orleans Parish School Board shall deliver written notice and explain the process set forth hereafter.

21. Such written notice shall:

    a. State the basis for the need for evaluation;

    b. State the time frame for the evaluation by the competent authority (within sixty (60) days of the notice);

    c. State the nature of the evaluation and the range of recommended special educational plans;

    d. Inform the parent of the right to refuse evaluation;

    e. Inform the parent that the summary of the evaluation and any recommended special educational plan will be furnished with an explanation;

    f. Inform the parent of the right to obtain an independent evaluation from another competent authority or (list of possible sources of evaluation) and representation; to examine all school records pertaining to the child; and to enter relevant comments in such school records;

    g. Inform the parent that if the evaluation indicates that the child is retarded and/or is to be recommended for special education, a notice of the reasons for any recommendations and of a right to a hearing as set forth hereafter in paragraph 24 will be provided;

    h. Inform the parent of his right to refuse any special education placement and the range of possible consequences thereof;

    i. Inform the parent, if the initial evaluation and any independent evaluation are in conflict, of the right to proceed to state court after administrative hearing in order to determine the correct evaluation as set forth under state law.

22. The evaluation shall:

    a. be conducted by a competent authority as defined by state law within sixty (60) days after notice;

    b. not result in a recommendation for placement in special classes for the retarded nor affixing the label retarded on any child in any way unless (1) he has an I.Q. on an individually administered I.Q. test of 69 or below, (2) he is also substantially subnormal in adaptive behavior or measures to be agreed upon; and (3) he is still rated substantially subnormal on both measures after the effects of socio-cultural background have been taken into account.

    c. if such retardation is indicated, result in a detailed recommendation for a specific education plan, including detailed educational diagnosis, prescription, and a mutually agreeable system of indicating the progress goals if the plan is eventually implemented;

    d. if the evaluation indicates a profound or severe mentally or multiply handicapped condition and the impossibility of providing educational services to the child in the Orleans Parish Public Schools, results in notice to the parent as set forth in paragraph 25.

23. If the competent authority finds a child retarded, or recommends a special educational plan, that competent authority shall provide personal consultation to the parent, and, upon request of the parent, a written summary of the evaluation.

24. The Orleans Parish School Board shall deliver notice to the parent of the action to be taken on the evaluation and provide the opportunity for a hearing as follows:

a. Such notice shall:

(1) describe the proposed educational plan, recommended placement, and hearing process in detail and attach a summary of the evaluation;

(2) state the specific and complete reasons for the proposed action, including the specification of any tests or reports upon which such proposed plan is based;

(3) describe any alternative opportunities available on a temporary or permanent basis;

(4) inform the parent of the right to a hearing before a hearing officer designated by the Orleans Parish School Board Superintendent no sooner than ten (10) days (waivable by the parent) and not later than forty-five (45) days after receipt of notice at a mutually convenient time to be agreed upon by the parent and hearing officer;

(5) inform the parent that the child may receive an independent evaluation from another competent authority or (list of possible sources), and has the right of representation.

(6) inform the parent of the right to be represented at the hearing; to examine the child's school records before the hearing, including any tests or reports upon which the proposed action may be based; to enter relevant comments in such school records; to present evidence, including expert medical, psychological and educational testimony; to confront and cross-examine any school official, employee, or agent of the Orleans Parish School Board who may have relevant evidence upon which the proposed action was based; and if there is a conflict in the initial evaluation and any independent evaluation, to proceed to court after the hearing to review any remaining dispute or conflict as set forth under state law.

(7) inform the parent of the right to refuse the recommended special education placement and the consequences thereof.

b. Upon request by the parent, the hearing shall be held as follows:

(1) at a time and place, not sooner than ten (10) (waivable by the parent) nor later than forty-five (45) days after notice, mutually convenient to and as agreed upon by the hearing officer and parent;

(2) closed unless the parent or guardian requests an open hearing;

(3) before a hearing officer independent of the evaluation and teaching of the child designated by the Orleans Parish School Board Superintendent.

c. At the hearing:

(1) the decision of the hearing officer shall be based solely upon the evidence presented at the hearing;

(2) the Orleans Parish School Board shall bear the burden of proof as to the appropriateness of the initial evaluations and any recommended placement, denial of placement or transfer;

(3) the child shall have the right to a representative of his own choosing, including legal counsel;

(4) a tape recording or other record of the hearing shall be made and, upon request, made available to the parent or his representative;

(5) the parent or his representative shall have the right to present evidence and testimony, and confront and cross-examine any official, employee or agent of Orleans Parish School Board who has information material to the evaluation and recommendation of placement for the child;

(6) after hearing testimony and examining evidence, the hearing officer may render an oral opinion and, in any event, must render a written decision, which makes a recommendation of an education plan and states the reasons therefor;

(7) such decision and opinion must inform the parent of his right to refuse the recommended placement, the alternative education programs available, the consequences of each choice, and, if the initial evaluation and any independent evaluation are in conflict, his right to proceed to state court in order to determine the correct evaluation as set forth under state law.

25. a. If the results of the evaluation reveal a profound or severe mentally or multiply handicapping condition, and, if the results of the evaluation and of the recommended educational plan contained therein indicate the impossibility of providing educational services to the child in programs under the direct administration of the Orleans Parish School Board, the Orleans Parish School Board shall make actual delivery of a summary of the evaluation, and notice of the recommended educational plan and of a proposed placement in a vocational rehabilitation program administered by or under the Department of Education or a proposed placement in programs administered by the Louisiana Health, Social and Rehabilitation Services Administration (hereinafter HSR) to ———— the Department of Education, the President of the State Board of Education and the HSR. ———————— Upon request of the Department of Education, the State Board of Education, or HSR, the Orleans Parish School Board shall furnish the requesting agency or agencies with copies of the child's school records, including all records involved in the evaluation of the child within five days of the request.

b. Upon the request of the Department of Education, the State Board of Education or HSR, a conference shall be held between the Orleans Parish School Board and the other agencies. The agency to whom the child has been recommended for placement and the Orleans Parish School Board must attend the conference, and the other agencies may be present. At the conference, the participants shall attempt to agree on a recommended special education plan.

c. After the conference the Orleans Parish School Board shall deliver a summary of the evaluation and notice of the recommended educational plan and placement to the parent, the

master hearing officer, the Department of Education, the State Board of Education and HSR, and shall explain the notice to the parent.

d. The notice shall:

(1) describe the proposed educational plan and placement in detail, give the reasons in detail why placement within the Orleans Parish School System was not recommended and ———— attach a summary of the evaluation;

(2) state the specific and complete reasons for the proposed action, including the specification of any tests or reports upon which such proposed plan is based;

(3) describe any alternative opportunities available on a temporary or permanent basis;

(4) inform the parent that unless waived by the parent, a hearing will be held before the master hearing officer no sooner than twenty-five (25) days and not later than sixty-five (65) days after receipt of notice at a mutually convenient time to be agreed upon by the parent, the Orleans Parish School Board, the State Department of Education, HSR and the hearing officer.

(5) inform the parent that the child may receive an independent evaluation from another competent authority within forty-five (45) days or (list of possible sources), and representation;

(6) inform the parent of the right to be represented at the hearing; to examine the child's school records before the hearing, including any tests or reports upon which the proposed action may be based; to enter relevant comments in such school records, to present evidence, including expert medical, psychological and educational testimony; to confront and cross-examine any

school official, employee, or agent of the Orleans Parish School Board, of the Department of Education and of HSR who have relevant evidence upon which the proposed action was based; and if there is a conflict in the initial evaluation and independent evaluation, to proceed to state court after the hearing in order to determine the correct evaluation as set forth under state law.

(7) inform the parent of the right to refuse the proposed placement and the consequences thereof.

e. The hearing, unless waived by the parents, shall:

(1) be held at a time and place, not sooner than twenty-five (25) days nor later than sixty-five (65) days after notice, mutually convenient to and as agreed upon by the hearing officer, the parent, the Department of Education, HSR and the Orleans Parish School Board;

(2) be a closed hearing unless the parent requests an open hearing;

(3) be held before the master hearing officer;

(4) include the parent, the Department of Education, HSR and the Orleans Parish School Board.

f. At the hearing:

(1) the decision of the master hearing officer shall be based solely upon the evidence presented at the hearing; this consent agreement and state law;

(2) the Orleans Parish School Board shall bear a heavy burden of proof to show by clear and convincing evidence that the child cannot and should not be served by the Orleans Parish School Board;

(3) the child shall have the right to a representative of his own choosing, including legal counsel;

(4) a tape recording or other record of the hearing shall be made

and, upon request, made available to the parent or his representative;

(5) the parent or his representative shall have the right to present evidence and testimony, and confront and cross-examine any official, employee or agent of Orleans Parish School Board, of the Department of Education, and of HSR who has information material to the evaluation and recommendation of placement for the child; and the representatives of the aforesaid agencies shall have the same rights, including the right to confront and cross-examine persons with relevant evidence.

(6) after hearing testimony and examining evidence, the master hearing officer may render an oral opinion and, in any event, must render a written decision, which makes a recommendation of an education plan and which places the child in an educational program, administered by or under the Orleans Parish School Board, by or under HSR, or in a vocational rehabilitation program administered by or under the State Dept. of Education and states the reasons therefor: provided however that in the event that the recommended educational plan calls for placement outside the Orleans Parish Public School System and such placement is impossible immediately because of a lack of facilities, the Orleans Parish School Board shall provide interim education and/or training pending the placement.

(7) such decision and opinion must inform the parent of his right to refuse the placement, the alternative education programs available, the consequences of each choice, and, if the initial evaluation and any independent evaluation are in conflict, the right to proceed to state court in order to determine the correct evaluation as set forth under state law.

g. Hearing Officer

(1) The master hearing officer shall be agreed upon by the unanimous consent of the parties and thereafter designated by the Court pursuant to Rule 53 FRCP. If the parties agree unanimously, a board of three or more persons appointed by the parties may constitute the master hearing officer; in such case each agency shall appoint a member to the board and shall arrange the compensation of its appointee which compensation shall be the sole responsibility of the appointing agency. In any other case, the compensation if any of the hearing officer and the manner of providing same and source of same shall be determined by the unanimous consent of the parties. Provided that the parties shall attempt to come to an agreement on the above by May 31, 1973 and upon a showing of good cause that date may be extended.

(2) The master hearing officer shall have access to the specific records of the defendants or their agents which are necessary for a determination by him of the appropriateness of the proposed placement and plan.

h. The Department of Education, the State Board of Education and HSR shall have the right, within twenty-five (25) days of receipt of the notice from the Orleans Parish School Board to file objections to the proposed special education plan and/or placement with the master hearing officer and to request a hearing. The objections shall state the reasons therefor and a copy shall be delivered to the parent, the Orleans Parish School Board, and the other state agency.

i. If a hearing is requested by the Department of Education, State Board of Education or HSR, or not waived by the parent, then the hearing shall be set between twenty-five (25) and sixty-five (65) days after receipt of the notice and shall be attended in all cases by the parent and representatives of the Orleans Parish School Board, the Department of Education and of HSR. If the hearing is requested by the Department of Education or State Board of Education or by HSR, representatives of the State Board of Education may attend. The parent, though he may have waived the hearing, shall again be given notice of the hearing by the Orleans Parish School Board as set forth in paragraph 25(d) supra.

j. In the event objections are not filed and a hearing is not requested by the Department of Education or State Board of Education or by HSR within twenty-five (25) days of receipt of the notice from the Orleans Parish School Board and if further, the hearing is waived by the parent within twenty-five (25) days of receipt of the notice from the Orleans Parish School Board, then the master hearing officer shall adopt the plan and placement proposed by the Orleans Parish School Board and shall order it implemented.

k. If the proposed placement of the child is to Vocational Rehabilitation under the State Department of Education or to HSR then the State Department of Education or HSR, if it exercises its right to file objections and request a hearing, shall have the right to make its own evaluation, on a priority basis, of the child. In the event the evaluation cannot be completed prior to the time of the hearing, the hearing officer, on request of the Department of Education or HSR shall delay the hearing until such time as the evaluation is completed. At the time of granting the delay the Department of Education or HSR shall give written notice thereof to the parent and shall advise the parent that a refusal to cooperate in the evaluation by the Department of Education or HSR will result in the Department of Education or HSR being relieved of any obligation to accept placement of the child. If the parent or child unreasonably refuses to cooperate in the evaluation process, the Department of Education or HSR shall be relieved of any obligation to accept placement. When a hearing is held on a proposed placement the master hearing officer may not order the placement of a child in Vocational Rehabilitation, or in a state school, in contravention of Federal law or regulations on Vocational Rehabilitation or mental retardation programs except with the consent of the Secretary of Health, Education and Welfare, or his designee. Children under the age of sixteen (16) may neither be recommended for present placement, nor be placed in Vocational Rehabilitation.

l. When a hearing is held on a proposed placement, the master hearing officer may not order the placement of the child in a program administered by or under the State Department of Education or State Board of Education or HSR in contravention of state law.

m. Regardless of the order of the master hearing officer, the Orleans Parish School Board shall maintain regular contact with the child.

n. The Department of Education and the Louisiana Health, Social and Rehabilitation Services Administration shall report once a year to

the Orleans Parish School Board on the present placement of each child currently placed in a program under their administration.

o. HSR and the State Department of Education may affirmatively remove children in their programs of education and training as follows:

1. HSR, upon determining that a child placed in an HSR program has received the maximum benefit and is capable of returning to the Orleans Parish Schools, shall notify the Orleans Parish School Board, the master hearing officer and the parent of that determination and the bases therefor. The Orleans Parish School Board shall have the right, within twenty-five (25) days of receipt of the notice from HSR to file objections to the placement of the child in the Orleans Parish Public Schools and to request a hearing before the master hearing officer. The objections shall state the reasons therefor, and the Orleans Parish School Board shall deliver a copy to the parent, HSR, and the Department of Education. Upon the filing of such objections and request for hearing, the master hearing officer shall hold a hearing to determine the child's placement as set in Paragraph 25(e–f). If the Orleans Parish School Board fails to file objections and to request a hearing timely, the master hearing officer shall order the child removed from HSR and placed by the Orleans Parish School Board. In either case, upon request of the parent or the Orleans Parish School Board, HSR shall deliver copies of the HSR records on the child to the requesting party.

2. HSR in its sole discretion may remove a child upon a determination that a child placed in an HSR program designed to train the child for employment or self-sufficiency in the community has received maximum benefit from the program and is prepared for employment or self-sufficiency in the community. The State Department of Education in its sole discretion may remove a child upon a determination that a child placed in vocational rehabilitation has completed his training because he has achieved his maximum vocational potential and is ready to be placed in employment. In either case HSR or State Department of Education shall notify the parent of that determination, the reasons therefor, and that if the child desires further education or training he should apply to the Orleans Parish School Board for placement.

3. In other cases, (except discipline, which is provided for in Section VIII infra), HSR and the Department of Education may remove children in their programs of education and training upon (1) notifying the master hearing officer, the parent, the Orleans Parish School Board of the specific bases for the removal and (2) either securing the prior written agreement of the Orleans Parish School Board to place the child or a hearing as set forth in paragraph 25(e–f). The Orleans Parish School Board shall have the right to file objections and request a hearing within twenty-five days of receipt of notice to contest the removal of the child from HSR or the State Department of Education and placement of the child by the Orleans Parish School Board; copies shall be delivered to the parent, HSR and Department of Education. If the Orleans Parish School Board agrees to place the child, it shall file notice with the master hearing officer of its placement and it shall place the child. If the Orleans

Parish School Board does not file objections and request a hearing, the master hearing officer shall order that the child be removed from HSR or the Department of Education and that the Orleans Parish School Board place the child. If the Orleans Parish School Board files objections and requests a hearing, the master hearing officer shall hold a hearing to determine the placement of the child as set forth in paragraph 25(e–f). In any event, upon request of the Orleans Parish School Board or the parent, HSR or the Department of Education shall deliver copies of the HSR or Department of Education records on the child to the requesting party.

4. HSR or the Department of Education may discharge a child from its programs in the event that the child elopes or abandons the program upon notice to the parent that the discharge shall be effective five (5) business days from the date of the notice unless the child returns to the program.

5. In the event that the Vocational Rehabilitation program under the State Department of Education is terminated there shall be no obligation under this agreement for retention in the program or placement in such program by the Department of Education. In the event a program or programs under HSR are terminated, there shall be no obligation under this agreement for placement or retention by HSR in such program or programs. If a program is terminated notice of such termination shall be sent to the parent and the Orleans Parish School Board. The notice shall also state that the child should apply to the Orleans Parish School Board for further placement in accordance with Section III hereof.

p. In the event that the Orleans Parish School Board, the Department of Education, the State Board of Education, or HSR is unwilling to accept the decision of the hearing officer to place a child in a program of education under their respective jurisdictions, such agency may petition this Court for relief of its obligation to place the child. Such petition shall set forth in detail the bases for the refusal to accept, alternative placements available to the child, and any further relief necessary to permit placement of the child and be served on the parent, the other parties in this cause, and the master hearing officer. Within fifteen (15) days of service of such petition, the parent, the other parties in this cause, and the master hearing officer, shall file their objections to the petition and any proposed relief. Thereafter, the Court shall hold a hearing and the Court shall issue an order resolving the dispute.

q. The hearing process provided for herein shall serve for those children so processed as the consolidated application and hearing process for public programs of education and training available to children resident of Orleans Parish.

26. a. The diagnosis, status and progress of every child recommended for other than regular education shall be evaluated and reviewed, no later than every three (3) years after the recommendation.

b. Such periodic reevaluation and review shall be made by the agency under whose supervision or administration the child is presently served.

c. Such periodic re-evaluation and review shall follow the procedures set

forth in paragraph 20–25 above; provided however, that:

(1) such procedures shall be the primary responsibility of the agency serving the child and modified accordingly;

(2) HSR or the Department of Education in its re-evaluation and review may submit a copy of its own evaluation report to the parent in lieu of following the procedures set forth in Paragraphs 20–25 above;

(3) if the child is served by an agency other than the Orleans Parish School Board, there need be no hearing before the master hearing officer unless demanded by the parent or one of the agencies;

(4) a review and re-evaluation must also include an investigation into and determination of the extent to which the child has received the services recommended in the special education plan and has progressed relative to the progress goals specified in the plan and the extent to which any alterations should be recommended in the special education plan for the child.

(5) such review and re-evaluation shall not be required by the Department of Education if the child was placed in vocational rehabilitation and his training has been completed.

IV. WITH RESPECT TO CHILDREN WHO ARE SUSPECTED OF BEING RETARDED OR ARE RETARDED AND WHO ARE PRESENTLY NOT BEING SERVED BY THE ORLEANS PARISH PUBLIC SCHOOLS:

27. The Orleans Parish School Board shall notify every parent of a child presently receiving no educational or training services, who is suspected of being, or is retarded, of his right to be processed as set forth in Section III above.

28. The Orleans Parish School Board shall deliver notice, as set forth in Section III above, to parents of (1) children in the most current Survey of Educables categories non-registered but *legally* out of school, (a) "mentally handicapped (not institutionalized)", and (b) "other (give reason for non-registration)" where there is any indication of possible retardation and (2) to children identified by the Reiser Survey. (Appendix, Proposal for the expansion of the special education program, N.O.P.S., March 8, 1973)

29. In addition, Orleans Parish School Board shall cause announcements and notices to be placed in the Times-Picayune, New Orleans States Item, and the Louisiana Weekly, in all issues published and on (radio and TV) for a three-week period commencing within five (5) days of the entry of this order, advising residents of Orleans Parish of their rights under this consent agreement and Louisiana Act 368 of 1972. Such announcement shall include the listing of a telephone number to be established by Orleans Parish School Board to compile the names of children presently not attending school.

30. As the children receiving no educational or training services are identified, they shall be processed as set forth in Section III above; provided, however, that the time periods may be modified, but in no case shall there be children who have been identified as receiving no services who have not been processed by October 1, 1973.

31. The Department of Education and the Louisiana Health, Social and Rehabilitation Services Administration shall notify the Orleans Parish School Board of the names and ad-

dresses of all children (1) who are suspected of being, or are retarded, (2) who are presently receiving educational or training services administered by them or under their supervision, and (3) who may be eligible for placement in the Orleans Parish Public Schools under state law. As identified, these children shall be processed as set forth under Section III above; provided, however, that the time periods may be modified, but in no case shall there be children who have been so identified who have not been processed by October 1, 1974.

V. WITH RESPECT TO CHILDREN PRESENTLY IN ORLEANS PARISH SCHOOL BOARD CLASSES FOR THE MENTALLY RETARDED WHO HAVE NOT BEEN GIVEN NOTICE, EVALUATION, AND HEARING AS SET FORTH HEARIN:

32. All such children shall be processed as set forth above in Section III, prior to May 1, 1974.

33. In addition, the Orleans Parish School Board shall send notices to every such child with an I.Q. of 70 or above by June 1, 1973. Such notice shall indicate that such child will be re-assigned to a regular instructional program by October 1, 1973, and the reasons therefor.

VI. WITH RESPECT TO A PARENT OR CHILD WHO SUSPECTS THAT THE CHILD IS OR MAY BE RETARDED:

34. Such child, regardless of their present placement, may demand to be processed as set forth in Section III above, provided, however, (a) that the Department or the Orleans Parish School Board presently providing services shall be responsible for initiating the process, and (b) such demands shall be honored only as frequently as required by state law.

VII. WITH RESPECT TO PERSONS OVER 21 WHO MAY HAVE BEEN SUSPECTED OF BEING OR WERE MENTALLY RETARDED AND WERE WITHOUT EDUCATION AS CHILDREN:

35. Such persons, insofar, as they become known to the Orleans Parish School Board, shall be processed as set forth in Section III above; provided, however, that among the range of alternative programs and placements available to such persons under this agreement shall be included only those programs operated by or under the Orleans Parish School Board and appropriate to their age.

This paragraph shall not apply to agencies other than the Orleans Parish School Board. However, this paragraph shall not deprive such persons of other state law rights.

VIII. WITH RESPECT TO CHILDREN WHO MAY BE OR ARE MENTALLY RETARDED AND DISCIPLINE PROBLEMS:

36. In the operation of student disciplinary procedures, the agents of the Orleans Parish School Board, and in any event the hearing officer designated by the Orleans Parish School Board Superintendent to hear discipline cases, shall refer any child who is suspected of possible retardation to the notice and hearing, evaluation and special educational plan, and periodic review procedures set forth above in paragraphs 20–24 of Section III; provided, however, (1) that such notice and hearing, evaluation and special educational plan shall be handled on an emergency basis, and in no case later than twenty-five days of referral, (2) that pending this period of evaluation for possible retardation the

discipline procedure may take precedence over the procedure set forth in Section III; and (3) that thereafter, upon an evaluation indicating that the child is mentally retarded the procedures set forth in Paragraphs 20–24 of Section III shall control, except as modified hereafter.

Provided further, however, that children already in programs for the mentally retarded in the New Orleans Public Schools may be suspended for disciplinary reasons pursuant to the School Board's disciplinary procedures on one occasion only per school year, not to exceed forty-five (45) days, and, may be suspended on an emergency, short-term basis of three (3) days or less on no more than three (3) occasions per school year without coming under the jurisdiction of the master hearing officer in this agreement.

37. In the event the evaluation indicates that the child is not retarded in any respect, the case shall be wholly outside the jurisdiction of this agreement and the master hearing officer.

38. In the event the evaluation indicates that the child is retarded and if the Orleans Parish School Board determines that the child should be provided an educational placement in the Orleans Public Schools despite the discipline problem, then the process set forth in Paragraphs 20–24 of Section III, shall govern.

39. In the event the evaluation indicates that the child is retarded and if the Orleans Parish School Board determines that the child cannot be served in the Orleans Parish Public Schools because of the discipline problem, the Orleans Parish School Board shall file a copy of the evaluation and a petition with the master hearing officer, setting forth the reasons for the proposed disciplinary action and dismissal of the case from the jurisdiction of this agreement and the master hearing officer. The Orleans Parish School Board shall deliver a copy of the petition and an evaluation and notice of the right to a hearing before the master hearing officer, to the parent, HSR and the Department of Education. If a hearing is requested by the parent, the hearing on the Orleans Parish School Board's petition shall be held before the master hearing officer. At this hearing before the master hearing officer, the individual case will be dismissed from the jurisdiction of the master hearing officer and this agreement upon a showing that (1) the discipline problem is not materially related to the child's retardation or multiple handicap, or (2) even if the discipline problem is materially related to the child's retardation or multiple handicap, such discipline problem is not remediable in conjunction with any special education plan appropriate to the child's age in the Orleans Parish Public Schools. If such showing is not made, the master hearing officer shall make his decision pursuant to paragraph 25 and the child shall be processed pursuant to Section III, provided, however, that:

(1) placement shall be limited to the Orleans Parish Public Schools;

(2) after placement, the Orleans Parish School Board may, pursuant to notice, have a hearing before the hearing officer no more often than every three (3) months to make such showing that the individual case should be dismissed from the the jurisdiction of the master hearing officer and this agreement;

(3) HSR and Department of Education may, but are not required to participate in the hearing;

(4) in the event the Orleans Parish School Board or the plaintiffs are unwilling to agree, for any reason, that the master hearing officer contemplated by paragraph 25(g), should serve as the master for hearings in this paragraph, the plaintiffs and local defendants, Spears, et al., may agree upon a special hearing officer to be designated by the Court pursuant to Rule 53, F.R.C.P., as the master hearing officer solely for this paragraph.

40. In the event that the evaluation indicates that the child is retarded and should be provided an educational placement outside of the Orleans Parish Public Schools despite the discipline problem, the child shall be processed pursuant to Paragraphs 20–25 of Section III. Provided, however, that the following additional standards shall be followed in the master hearing Officer's determination.

(1) If HSR or the Department of Education shows that it cannot serve the child because of the discipline problem, the agency making such showing shall be relieved of the obligation of placement under this agreement.

(2) If HSR or the Department of Education shows that the discipline problem is unrelated to the child's retardation or multiple handicap or even if the discipline problem is related to the child's retardation or multiple handicap, such discipline problem is not remediable in conjunction with the vocational rehabilitation program of the Department of Education or programs operated by HSR, the agency making such showing with respect to its program or programs shall be relieved of the obligation of placement under this agreement. If after placement the Department of Education or HSR determines that a child's behavior is materially disruptive to the extent that it is having an adverse effect on the program in which he has been placed, he may be suspended on an emergency basis. The responsible agency shall send notice of this action to the parent and the master hearing officer stating the reasons therefor and the parent's right to a hearing upon request within 25 days before the master hearing officer. If the parent does not timely request a hearing, the child's placement in the program may be terminated by the responsible agency. If the parent timely requests a hearing, the master hearing officer shall order the case dismissed from the jurisdiction of this agreement and the prior placement order vacated upon a showing by the responsible agency at the hearing that the child's behavior was materially disruptive to the extent of having an adverse effect on the program in which he was placed.

IX. APPEALS TO THE DISTRICT COURT.

41. The parties may petition the Court for resolution of disputes remaining after any decision of the master hearing officer.

APPENDIX B

NOTICE

TO: All parents, guardians, tutors or curators of persons resident of Orleans Parish who are, or who are suspected of being, retarded.

NOTICE IS HEREBY GIVEN:

(1) That a proposed Preliminary Consent Agreement, which has been agreed to by the parties through their counsel

and approved on an interim basis by the Court in Lebanks v. Spears, E.D.La., C.A. No. 71–2897, Section E, is on file with the Clerk of the United States District Court for the Eastern District of Louisiana, Section E, and available for inspection there and in the offices of the Superintendent of the Orleans Parish Public Schools; the State Superintendent of Public Education; the Commissioner of Louisiana Health, Social and Rehabilitation Services Administration (hereinafter HSR); and the Director, Division of Mental Retardation, HSR.

(2) That the above mentioned complaint is filed on behalf of persons resident of Orleans Parish who are or become between the ages of five (5) and twenty-one (21) inclusive; who have been, are or may be suspected of being mentally retarded or who have been, are, or may be identified as mentally retarded; and who have been, are or may be effectively denied a free, publicly supported program of education and training and/or a fundamentally fair procedure of obtaining same.

(3) The complaint raises certain procedural and substantive claims against the practices of the Orleans Parish Public Schools, the State Superintendent and Board of Education, and HSR, because of their alleged failure to provide mentally retarded persons a free, publicly supported program of education and a fundamentally fair procedure of obtaining same.

(4) That the proposed Preliminary Consent Agreement, upon final approval and preliminary Order of the Court, would provide that each resident mentally retarded person between the ages of five (5) and twenty-one (21), inclusive, would be provided the opportunity for a free, publicly supported program of education and training; that notice, evaluation and an opportunity for a hearing concerning the evaluation and any recommended educational placement for the mentally retard-

ed in the Orleans Parish Public Schools would be provided; and that a consolidated notice, hearing and application process before a special master hearing officer would be provided for certain retarded persons recommended for education placement in programs not conducted by the Orleans Parish Public Schools.

(5) That the terms of the preliminary order set forth the rights and responsibilities of the parties through February 1, 1975, at which time the agreement may be modified pursuant to pleading, hearing, and order.

(6) That the parents, guardians, tutors, or curators of persons resident of Orleans Parish who are suspected of being, or who are, retarded who wish to object to the proposed Preliminary Consent Agreement may do so by entering an appearance and filing a written statement of objections with the Clerk of the United States District Court of the Eastern District of Louisiana, Section E, 400 Royal Street, New Orleans, Louisiana, on or before May 9, 1973. Hearing thereon shall be held before the Court at 10:00 o'clock A. M., on the 23rd day of May, 1973.